UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STANLEY WOLFE, Individually and on Behalf of All Other Persons Similarly Situated, | Civil Action No.: |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| ROYAL CARIBBEAN CRUISES LTD., RICHARD D. FAIN, and BRIAN J. RICE, | |
| Defendants | |

**CLASS ACTION COMPLAINT**

Plaintiff Stanley Wolfe, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Royal Caribbean Cruises Ltd. ("Royal Caribbean" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Royal Caribbean securities between April 23, 2009

and July 27, 2011, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2. Royal Caribbean is a global cruise company operating a fleet of vessels in the cruise vacation industry. The Company operates through brands which primarily serve the contemporary, premium and deluxe segments of the cruise vacation industry, which also includes the budget and luxury segments.

3. On July 27, 2011, after the market closed, the Company disclosed "an error in the previous accounting treatment of interest expense relating to its amortization of certain financing fees and has revised its past financial statements to reflect the correct accounting." As a result of the accounting error, the Company admitted that it had overstated the earnings per share ("EPS") for 2009, 2010, and the first quarter of 2011 by $0.05, $0.15 and $0.06, respectively. The Company also reduced its full-year earnings guidance by $0.10 per share excluding the accounting error, and by an additional $0.20 per share with the error, rending the Company's new outlook for 2011 EPS to a range of $2.85-$2.95, down from a previous range of $3.10-$3.30.

4. On this news, the Company's shares declined $4.50 or more than 12.5% and closed at $31.26 the following day.

5. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company improperly accounted interest expenses related to

the amortization of certain financing fees related to certain of the Company's export credit agency guaranteed loans; (2) the Company lacked adequate internal and financial controls; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

9. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as the shares of Royal Caribbean were publicly traded in this District. Moreover, Royal Caribbean's principal place of business is located within this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11. Plaintiff Stanley Wolfe, as set forth in the attached certification, purchased Royal Caribbean securities at artificially inflated prices during the Class Period and has been damaged thereby.

12. Defendant Royal Caribbean is a Liberian corporation, with its principal place of business located at 1050 Caribbean Way, Miami, FL 33132.

13. Defendant Richard D. Fain ("Fain") at all relevant times herein was the Chairman of the Company's Board of Directors and Chief Executive Officer.  During the Class Period, Defendant Fain sold approximately 797,000 shares of Royal Caribbean, profiting in gross proceeds of over $30.8 million.

14. Defendant Brian J. Rice ("Rice") at all relevant times herein was the Company's Chief Financial Officer and Executive Vice President.  During the Class Period, Defendant Rice sold approximately 122,015 shares of Royal Caribbean, profiting in gross proceeds of over $4.8 million.

15. The defendants referenced above in ¶¶ 13 and 14 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16. Royal Caribbean is the world's second largest cruise company operating 40 ships in the cruise vacation industry with an aggregate of approximately 92,300 berths as of December 31, 2010. Its brands include Royal Caribbean International, Celebrity Cruises, and Azamara Club Cruises along with the Pullmantur brand, which has been custom tailored to serve the cruise markets in Spain, Portugal and Latin America and the CDF Croisières de France brand which

provides a custom tailored product targeted to the French market. In addition, the Company has a 50% investment in a joint venture which operates the brand TUI Cruises, specifically tailored for the German market.  The Company's ships operate on a selection of worldwide itineraries that call on approximately 420 destinations on all seven continents. In addition to its headquarters in Miami, Florida, the Company has offices and a network of international representatives around the world which focus on our international guest sourcing.

## Materially False and Misleading
## Statements Issued During the Class Period

17.     On April 23, 2009, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2009.  The Company reported net loss of $36.2 million, or ($0.17) EPS and revenue of $1.3 billion, as compared to net income of $75.6 million, or $0.35 EPS and revenue of $1.4 billion for the same period a year ago.

18.     On April 23, 2009, the Company filed a quarterly report for the period ended March 31, 2009 on Form 10-Q with the SEC, which was signed by Defendant Rice and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-Q contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

19.     On July 29, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009.  The Company reported net loss of $35.1 million, or ($0.16) EPS and revenue of $1.3 billion, as compared to net income of $84.7 million, or $0.40 EPS and revenue of $1.6 billion for the same period a year ago.

20. On August 7, 2009, the Company filed a quarterly report for the period ended June 30, 2009 on Form 10-Q with the SEC, which was signed by Defendant Rice and reiterated the Company's previously reported quarterly financial results and financial position. In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

21. On November 3, 2009, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2009. The Company reported net income of $230.4 million, or $1.07 EPS and revenue of $1.8 billion, as compared to net income of $411.9 million, or $1.92 EPS and revenue of $2.1 billion for the same period a year ago.

22. On November 3, 2009, the Company filed a quarterly report for the period ended September 30, 2009 on Form 10-Q with the SEC, which was signed by Defendant Rice and reiterated the Company's previously reported quarterly financial results and financial position. In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

23. On January 28, 2010, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009. For the fourth quarter, the Company reported net income of $3.4 million, or $0.02 EPS and revenue of $1.5 billion, compared to net income of $1.5 million, or $0.01 EPS and revenue of $1.5 billion, for the same period a year ago. For the year, the Company reported net income of $162.4 million, or $0.75

EPS and revenue of $5.9 billion, as compared to net income of $573.7 million, or $2.68 EPS and revenue of $6.5 billion for the same period a year ago.

24. On February 23, 2010, the Company filed an annual report for the period ended December 31, 2009 on Form 10-K with the SEC, which was signed by, among others, Defendants Fain and Rice and reiterated the Company's previously annual financial results. In addition, pursuant to SOX, the Form 10-K contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-K was accurate, and that they disclosed any material changes to the Company's internal controls over financial reporting.

25. On April 28, 2010, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2010. The Company reported net income of $87.4 million, or $0.40 EPS and revenue of $1.5 billion, compared to net loss of $36.2 million, or ($0.17) EPS and revenue of $1.3 billion, for the same period a year ago.

26. On April 29, 2010, the Company filed a quarterly report for the period ended March 31, 2010 on Form 10-Q with the SEC, which was signed by Defendant Rice and reiterated the Company's previously reported quarterly financial results and financial position. In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

27. On July 22, 2010, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2010. The Company reported net income of $60.5 million, or $0.28 EPS and revenue of $1.6 billion, compared to net loss of $35.1 million, or ($0.16) EPS and revenue of $1.3 billion for the same period a year ago.

28. On July 23, 2010, the Company filed a quarterly report for the period ended June 30, 2010 on Form 10-Q with the SEC, which was signed by Defendant Rice and reiterated the Company's previously reported quarterly financial results and financial position. In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

29. On October 26, 2010, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2010. The Company reported net income of $356.8 million, or $1.64 EPS and revenue of $2.1 billion, compared to net income of $230.4 million, or $1.07 EPS and revenue of $1.8 billion, for the same period a year ago.

30. On October 27, 2010, the Company filed a quarterly report for the period ended September 30, 2010 on Form 10-Q with the SEC, which was signed by Defendant Rice and reiterated the Company's previously reported quarterly results and financial position. In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

31. On January 27, 2011, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2010. For the fourth quarter, the Company reported net income of $42.7 million, or $0.20 EPS and revenue of $1.6 billion, compared to net income of $3.4 million, or $0.02 EPS and revenue of $1.5 billion for the same period a year ago. For the year, the Company reported net income of $547.5 million, or $2.51

EPS and revenue of $6.8 billion, compared to net income of $162.4 million, or $0.75 EPS and revenue of $5.9 billion, for the same period a year ago.

32. On February 24, 2011, the Company filed an annual report for the period ended December 31, 2010 on Form 10-K with the SEC, which was signed by, among others, Defendants Fain and Rice and reiterated the Company's previously reported annual financial results and financial position. In addition, pursuant to SOX, the Form 10-K contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-K was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

33. On April 28, 2011, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2011. The Company reported net income of $91.6 million, or $0.42 EPS and revenue of $1.7 billion, compared to net income of $87.4 million, or $0.40 EPS and revenue of $1.5 billion, for the same period a year ago.

34. On April 28, 2011, the Company filed a quarterly report for the period ended March 31, 2011 on Form 10-Q with the SEC, which was signed by Defendant Rice and reiterated the Company's previously reported quarterly financial results and financial position. In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Fain and Rice, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

35. The statements referenced in ¶¶ 17 - 34 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) the Company improperly accounted interest expenses related to the amortization of certain financing fees related to certain

of the Company's export credit agency guaranteed loans; (2) the Company lacked adequate internal and financial controls; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH BEGINS TO EMERGE

36.     On July 27, 2011, after the market closed, the Company reported its financial results for the second quarter ended June 30, 2011.  The Company reported net income of $93.5 million, or $0.43 EPS and revenue of $1.8 billion, compared to net income of $53.7 million, or $0.25 EPS and revenue of $1.6 billion for the same period a year ago.  The Company also disclosed that "[m]anagement identified an error in the previous accounting treatment of interest expense relating to its amortization of certain financing fees and has revised its past financial statements to reflect the correct accounting."  Without the accounting error, the Company would have reported $0.47 EPS for the second quarter 2011.  The Company also reduced its full-year earnings guidance by $0.10 per share excluding the accounting error, and by an additional $0.20 per share with the error, lowering the Company's new outlook for 2011 EPS to a range of $2.85-$2.95, down from a previous range of $3.10-$3.30.

37.     Later in the day, the Company held a conference call with analysts where Defendant Fain said the Company was "embarrassed" about the accounting error.  Also, on the conference call, Defendant Rice disclosed the following concerning the accounting restatement:

> During a recent review, our finance team discovered an error in the way we were amortizing certain fees, mainly related to a few of our export credit agency guaranteed loans. We've all asked ourselves how this could have happened. We have completed many of these types of financings, and there was a change in the timing of the payment terms of certain fees related to a few recent loans, which required a different accounting treatment than our past financing. The revision in essence accelerates the amortization of these fees. It does not any cash impact and does not increase the total expense over the life of the loans.

> Frankly, this was a human error. And while we are very confident this was an isolated event, we have further enhanced our controls in this area to prevent this risk of future inaccuracies….
>
> We did conclude, however, that a revision to our interest expense was appropriate, and we have included a reconciliation of these adjustments in our press release. The revision announced to a change in earnings per share of $0.05, $0.15 and $0.06 in 2009, 2010, and the first quarter of 2011, respectively.

38. On July 28, 2011, *Dow Jones Newswires* pointed out that the accounting error "caused the revision of some prior results and lower guidance for the rest of the year." Moreover, an analyst at Rodman & Renshaw Equity Research expressed that the Company "pulled a fast one last night dropping a 'kitchen sink' press release" and noted that "the accounting change came out of left field."

39. On these devastating revelations, the Company's shares declined $4.50 per share, or more than 12.5% on July 28, 2011, to close at $31.26 per share, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Royal Caribbean securities during the Class Period (the "Class"); and were damaged thereby. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Royal Caribbean securities were actively traded on

the New York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Royal Caribbean or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Royal Caribbean;

- whether the Individual Defendants caused Royal Caribbean to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Royal Caribbean securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Royal Caribbean securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Royal Caribbean securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Royal Caribbean securities; and (iii) cause Plaintiff and other members of the Class to purchase Royal Caribbean securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

14

influence the market for Royal Caribbean securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Royal Caribbean's finances and business prospects.

52.     By virtue of their positions at Royal Caribbean, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Royal Caribbean securities from their personal portfolios.

54.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Royal Caribbean, the Individual Defendants had knowledge of the details of Royal Caribbean internal affairs.

55.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Royal Caribbean. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Royal Caribbean's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Royal Caribbean securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Royal Caribbean's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased Royal Caribbean securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56. During the Class Period, Royal Caribbean securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Royal Caribbean securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Royal Caribbean securities were substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Royal Caribbean securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating false financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. During the Class Period, the Individual Defendants participated in the operation and management of Royal Caribbean, and conducted and participated, directly and indirectly, in the conduct of Royal Caribbean's business affairs. Because of their senior positions, they knew the adverse non-public information about Royal Caribbean's misstatement of income and expenses and false financial statements.

61. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Royal Caribbean's financial condition and results of operations, and to correct promptly any public statements issued by Royal Caribbean which had become materially false or misleading.

62. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Royal Caribbean disseminated in the marketplace during the

Class Period concerning Royal Caribbean's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Royal Caribbean to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Royal Caribbean within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Royal Caribbean securities.

63. Each of the Individual Defendants, therefore, acted as a controlling person of Royal Caribbean. By reason of their senior management positions and/or being directors of Royal Caribbean, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Royal Caribbean to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Royal Caribbean and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Royal Caribbean.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 8, 2011

**SAXENA WHITE P.A.**

/s/ *Joseph E. White III*
Joseph E. White III (Florida Bar # 0621064)
Christopher S. Jones (Florida Bar # 306230)
Lester R. Hooker (Florida Bar # 0032242)
Brandon T. Grzandziel (Florida Bar#0058732)
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

**POMERANTZ HAUDEK
 GROSSMAN & GROSS, LLP**
Marc I. Gross
Jeremy A. Lieberman
100 Park Avenue, 26th Floor
New York, New York 10017-5516
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ HAUDEK
 GROSSMAN & GROSS, LLP**
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2011, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/ Joseph E. White, III*
Joseph E. White, III
